Good morning, Your Honors. Lewis Yellen from the Department of Justice here today representing the United States. In Avitrak, the Supreme Court of Alaska articulated a two-part test for determining whether or not a third party is an implied insurer under an insurance policy. The Court said, and I'm quoting, where the risk to the insurer is unchanged and where the third party is within the class intended to be benefited by the parties to an insurance contract. Then the Court said, the third party is an implied insurer under the contract. After making extensive findings of fact, the district court held that the United States was an implied insurer under the contract at issue in this case. Because the Court findings of fact, I thought it was summary judgment. Yes, Your Honor. It was summary judgment. I thought it was findings of fact, not summary judgment. That's right, Your Honor. Excuse me. That was a misspoken. It wasn't a finding of fact. These were the undisputed facts that were in the record. That the United States was a member of the class intended to be benefited by the contract because the contract was to protect an employer subject to vicarious liability for injuries caused by Bristol Bay employees in the course of their employment, acting within the scope of their employment. In addition, the Court determined initially that the risk to Continental would be unchanged whether or not Bristol Bay employees were deemed employees of the United States or employees of Bristol Bay. The Court then later reversed itself, saying that the policy did not embrace risks associated with insuring the United States. Counsel, the Alaska Supreme Court cases struck me as a little difficult to reconcile. And one element in some of them was that one party was required to buy coverage for itself and the other. For example, landlord and tenant might have a lease where it's a net-net-net lease, a triple-net lease, and the tenant is required to obtain all the insurance on the building, the fire insurance, and also liability coverage, protecting both itself and the landlord. And the tenant obtains the liability coverage, but only protecting itself, not protecting the landlord. In this case, I don't recall in the record that Bristol Bay Native Corporation was required to obtain insurance protecting the United States as well as Bristol Bay. You're right, Your Honor. You are correct that there was no requirement of that sort. However, that's not a requirement of the implied insured doctrine under the Alaska Supreme Court's jurisprudence. We know that because most recently in the Simmons case, the Supreme Court of Alaska held that a plaintiff in that case had standing to sue an insurer because of the availability of the implied insured doctrine. That was a motorist case, an underinsured motorist insurance policy in which the daughter of a named insured, of a potentially named insured, could have had standing to sue, the Supreme Court said, because she might benefit from the implied insured doctrine. There was no claim that there was any agreement or contract between the father and the daughter in that case to cover any injuries in that context. So we would say that that is definitely what Your Honor has noted, the agreement or the contractual agreement between a landlord and a tenant to provide insurance coverage is an element of some of these cases. But in distilling its cases in Avi Truck, the Court identified these two factors, class and risk, and only identified those as the implied insured. So this factor that you've identified, while a common element in some of the cases, is not a requirement of the implied insured cases. Now we never know quite what risk unchanged means, the way they use it in Avi Truck. My thinking is if I were advising an insurance underwriter, I'd say to them, well, if the defendant is somebody local, you may do a whole lot better in front of a jury than if the defendant is an outside corporation or the United States government. On the other hand, this is not a jury trial case. This is a judge trial case. I guess if you're writing a policy, though, for Bristol Bay, you don't know that. You think you're writing a policy where you may get a jury trial. So it would be a native jury and the local native corporation is the defendant. That's a lower risk. Well, Your Honor, I think that what the Court is looking at when it talks about risk is the hazards that are to be insured against. So, for instance, in Avi Truck, the question was the risk of a plane crashing and there being some property damage that the owner of the plane would have lost out on, the property that the owner of the plane would have lost use for. In this case, the risk would be the risk that an employee of Bristol Bay would be liable for some conduct that caused harm to another person. And the district court initially analyzed and, in our view, initially correctly analyzed the risk by saying that it didn't matter who the employer was, whether it was Bristol Bay or the United States. The risk remained the same because the harm that was to be insured against was the harm that could be caused by an employee, whether the employer was Bristol Bay or the United States. I'd like to point out, Your Honor, that this risk determination, the Court's second risk determination, that it couldn't be sure that the risk would remain unchanged, is not something that CNA is defending in this appeal. They apparently are producing instead arguments to try and avoid application of Avi Truck rather than arguing within the framework of Avi Truck that the United States is either not in the class meant to be protected or that the risks would somehow change if the United States were an employee insured. They argue, for example, that the cases are limited to the property insurance context, but that's just not true. You can look at the cases in which the doctrine has been discussed and applied, and they're not purely property cases. As I mentioned, the Simmons case, which we cite in our reply brief, was an underinsured motorist insurance policy case. In addition, the Olympic case, which predated Avi Truck, involved a wrongful death claim. And if the Supreme Court of Alaska had intended to limit this doctrine only to property insurance, property loss claims, it would have had a very easy basis for holding that in Olympic. Olympic was third-party tort liability? Exactly. Exactly. And instead of saying, well, no, this doctrine only applies to property loss, the Court did an analysis of whether or not the risk would have remained unchanged. And because it determined that the risk would have changed, it held that there wasn't an implied insured in that context. In addition to arguing that Avi Truck just doesn't apply because it supposedly only applies to property context, CNA also argues that there are additional requirements besides class and risk within the doctrine. So, for instance, they argue that the United States is not an implied insured because Bristol is not legally obligated to pay the damages because of the existence of FTCA coverage. Excuse me. But the contract, the insurance contract here. I think Olympic insurance went the other way, though, didn't it? It did go the other way, Your Honor. But that was because the Supreme Court of Alaska determined that the risk would have changed if the landlord were included in the policy. It was the determination of risk specifically. And, in fact, in Avi Truck, in characterizing Olympic, the Supreme Court of Alaska said it was risk that was determinative in that case. So the only point about Olympic is that it was risk and class that were the salient features there. And though it did go the other way, as I was mentioning before, Your Honor, the key point is if the Supreme Court had wanted to say that this was limited to property context, it wouldn't have had to do an analysis of risk at all. It would have just said categorically this is the wrong sort of case to raise an implied insured argument. As to the CNA's argument that Bristol is not legally obligated to pay, first I'd like to point out that the contract says that Continental would pay, and I'm quoting from the contract at ER 405, Continental would pay, quote, sums that the insured becomes legally obligated to pay as damages, close quote. So to argue that it's only Bristol begs the question, because the question here is whether or not the United States is an implied insured. To say that only Bristol could be an insured assumes that there is no implied insured doctrine that could ever be possible, that it would only be a named insured. That's precisely the question that we're here talking about today. Moreover, under CNA's theory, Continental could and presumably did in this context accept premiums to insure against no risk whatsoever, because the United States' coverage through the FTCA would have rendered risk minuscule if non-existent. Again, this is just to see if I understand this right. Yes, Your Honor. The statutory arrangement between the native corporation and the United States government is that if a native corporation's employee negligently insures a third party, the liability falls on the United States and not the native corporation. That's correct, Your Honor. Is that correct? That's correct, Your Honor. So if the insurance company only insures for the liability to third parties of the native corporation, it's getting a premium for nothing. It covers nothing. Is that right? It would be an exaggeration to say nothing. Okay, what is it? Because there are potential gaps in FTCA coverage, which the insurer could Anything like defamation or Or things that would not be Things that aren't, that the FTCA says there's no government liability for, the native corporation could still be liable for? Well, I'm sorry, no. Things that are specifically excluded by the FTCA I remember a few things that the FTCA says the government won't be liable for. Right, I don't Defamation, assault and battery, a few other things. Right. My understanding, Your Honor, is that those things would not be something that a plaintiff could recover against a Bristol Bay employee for. Conceivably, I'm not sure that the law is settled in this context. At least I haven't been able to find a clean answer as to whether or not Bristol Bay in this context is sued for defamation. Let me make sure you understand what I'm asking and why I'm asking it. Yes, Your Honor. It struck me that your strongest argument was that if the insurance company doesn't insure the United States for its liability as essentially the party left holding the bag for the native corporation, then it gets a premium for nothing. It gets a premium and it's pure windfall. That struck me as your strongest argument. I'm trying to find out if that argument is well-founded. Yes, Your Honor. Because if they get a premium for something, it could be, well, kind of like judges' liability insurance. Judges have absolute immunity for the mistakes we make on the bench, but we have some exposure for certain kinds of mistakes that we make in, I don't know, administration or something. Yes, Your Honor. And there, the insurance company is not getting any windfall. They're charging a premium commensurate with the exposure that judges have. If that's the kind of policy that Continental sold to the native corporation, your argument is not well-founded. On the other hand, if the United States is left holding the bag for anything a third party could sue the native corporation for, your argument is well-founded. I'm trying to find out which it is. There's a middle ground, I believe, Your Honor. The middle ground is that there could be some risks outside of the FTCA that Bristol Bay could conceivably be liable for that could be bought under a private insurance policy. However, the undisputed – Can you be more concrete? Well, let me ask it maybe in this more specific way because I'm following Judge Klinefeld's question. And so, FTCA doesn't cover assault and battery. Well, neither does the CNA policy, right? That is correct. I'm looking for the insuring agreement, but the definition of personal injury or property damage, I don't know if it covers property damage. It's merely a third-party policy. It covers property damage to a third party's property, not to the – Right, so it's a third-party policy. But generally, these would exclude defamation or assault and battery, almost the same exclusions that the FTCA would have. Intentional acts as opposed to negligent acts. That's right, Your Honor. And this was part of the middle ground that I was trying to explain. You're saying it's conceivable. And I'm trying to say, well, what, concretely? In fact, the coverage seems to have been almost identical. And even, I guess what I was suggesting is, even if there were some conceivable gaps that could fall under the policy that wouldn't fall under the FTCA, it's undisputed that premiums, which this policy began in 1989, the FTCA coverage began in 1993, the premiums increased over that period of time. They did not level off or decrease. And if we thought that it was an undisputed fact in this case that – It just doesn't tell me much. You see, I'm thinking, suppose that there's a defamation claim against the native corporation and the feds don't pick it up because the Federal Court Claims Act doesn't cover defamation, if I recollect correctly. Defamation claims are made now against employers with some frequency. They give somebody a bad reference and the person who got the bad reference sues. So there would be reason for premiums to go up just because employment litigation has gone up. I think, Your Honor, in the case where there's an explicit exclusion from FTCA, I think the United States would stand in and assert the defense. I don't think defamation is the type of case. Also, you're saying that in such a case the United States is still substituted as a defendant and the difference is the native corporation just has no liability to the third party for defamation. Absolutely. That's exactly right, Your Honor. The reason why I'm conceding that there is some conceivable ambiguity, that there are some things that the FTCA may not cover, I don't know what those specific things are. I guess what I'm trying to say is – It would have been helpful if you told me that at the beginning, that you think there may be some fringe there and you don't know. I'm sorry, Your Honor. I'm sorry for not being clear. Yes, I think that there could be a fringe that we don't know about. The point is that this coverage in this particular policy seems to be coextensive with FTCA coverage, that the premiums increased over time from before the FTCA applied until after the FTCA applied. And it's an undisputed fact that if Continental had intended to exclude FTCA coverage, they could have done so by making it an express exclusion in the policy, and in fact that they would have done so, but that there was no exclusion in this case whatsoever. The last point I'd like to address before reserving a little bit of time is CNA's claim that the FTCA bars the United States' claim against CNA. They claim that by making the FTCA applicable to Indian tribe contractors in this context, Congress intended for the United States to be the exclusive carrier of liability for negligence of employees in this context. But that's just not the case. The early automobile insurance coverage cases, which came out not terribly long after the FTCA was enacted, are very informative on the score. We cite the Government Employees Insurance Company case from the Tenth Circuit and the Myers case from the Fifth Circuit in our briefs. In those cases, the courts determined that where an insurance policy had extraordinarily broad coverage to cover anyone who would have been liable for a negligent, excuse me, an automobile accident, that the United States had the benefit of that coverage as an additional insured. Now, that is an additional insured rather than an implied insured, but the principle is the exact same. As the Tenth Circuit put it, the FTCA makes the United States liable as a private person and concomitant with that liability. I don't know if it is the same. Additional insured is quite a different thing from implied insured because the insurance contracts provide expressly for additional insureds. Agreed, Your Honor, but this is only to the — If your kid comes home for Christmas and you lend the kid the car, even though his name's not on a policy, he's an additional insured. Agreed, Your Honor. I'm not trying to say that for all purposes additional insured and implied insured are the same. My only point here is — Not at all the same. My only — The policy has a section. It says additional insureds shall consist of those who drive the named insured's automobile listed above with the permission of the named insured or his agent. Right. My only point here, Your Honor, is that this is in response to CNA's claim that Congress intended for the United States always to be the sole and exclusive coverer of liability where the FTCA applies. And my point is that in these cases, we know that Congress, that courts have held that Congress did not intend that because it permitted private insurance coverage to apply in these motor insurance coverage contexts. My only point there is that for that point, the distinction between implied insured and additional insured doesn't matter. The point is that Congress did not intend for the United States to be the sole and exclusive carrier of risk in that context. That if there was private insurance that was available and applicable, that private insurance should pay out for damages that were incurred. That's my only point on that issue. If I could, I know I've got very little time, but I'd like to reserve it if I may. Thank you, Counsel. Shana Lindemuth of Dorsey & Whitney for Continental Insurance Company. In reconsidering this case, the district court not only vacated its prior order granting the United States summary judgment, it entered summary judgment on behalf of Continental. This constituted nothing less than a complete turnaround of this case. It is not something that the district court did lightly. So what happened? Counsel, we can't defer to the district court. It's de novo review. Let me ask what's on my mind to you. You already know it because I asked your adversary. If I understand the scheme correctly, instead of the native corporation being liable to third parties for torts of its employees, the United States is liable to third parties for torts of the native corporation's employees. The native corporation buys liability insurance. If the liability insurance does not benefit the United States when it undertakes to step into the native corporation's shoes to pay liability claims to third parties, then it looks as though the insurance company gets the premium without providing any insurance. Is that true, or is there something that it's providing insurance for in exchange for the money? Right. The insurance policy is not illusory. What are they insuring against that the United States won't be picking up? Now, there's only Federal Tort Claims Act coverage for those activities that the government certifies to be within the Indian Self-Determination Act. Now, these tribes existed before. This has nothing to do with tribes. It's a native corporation. I don't know if you're from Alaska. I am. It's an ANCSA corporation, so it's not a tribe. This is not an ANCSA corporation, Your Honor. Well, it isn't? This is Bristol Bay Area Health Corporation, and it was formed by 56 tribes who decided to get together and form it. Is it a business corporation or a non-profit corporation? It's a non-profit tribal organization, but it was formed. Well, if it's a non-profit under Alaska law, then it does not have tribal sovereign immunity, right? Right. I'm not arguing that it does, Your Honor. The point is, though, that Bristol Bay Area Health Corporation and its Indian organizations also perform other activities than those within and those specified within their Indian Self-Determination Act compact with the federal government. And it's a matter of record, in this case, Your Honor, at Excerpt 6 and at 27, that Bristol Bay received state funding for state programs. It received federal housing program money that was outside the Indian Self-Determination Act, and it even received a water safety grant, which would be for providing activities outside the Indian Self-Determination Act. Now, you know, this is... Hold on. This is important. You're saying it does stuff outside the Indian Self-Determination Act, so the United States assumption of liability under the Indian Self-Determination Act does not exhaust the third-party liability exposure of the native corporation. That's exactly right, Your Honor. And the things that it does outside are housing, and what else? In this particular case, it's housing, state programs. It didn't say which kind of state governmental programs it had. And also they received money for a water safety grant. Water safety. Teaching kids how to swim or something like that? Teaching kids how to swim. Now, Bristol recognized that it had risk outside of the Indian Self-Determination Act, and it chose to purchase a liability policy to protect itself. Now, the mere fact that the government has to certify claims as being within the Indian Self-Determination Act is evidence itself, and not all activities that these kind of Indian organizations perform will fall within the Indian Self-Determination Act. And even when there's activities that could fall within the Indian Self-Determination Act, these tribal organizations still get sued. And, in fact, in this case, Bristol was sued prior to and Continental defended that case and had it dismissed prior to the Wilsons, the injured party, bringing their Federal Tort Claims Act against the government  Now, this simply is in no way can be seen as an illusory policy or anything of the matter. If we've covered that ground, Your Honor, I want to jump back to Alaska law here, because there's a lot of confusion over the case law cited as giving the United States implied rights against this policy, because it's undisputed that the contract itself does not name the United States as an additional insured. So the only argument here is whether Alaska law somehow implies the United States as an insured in this case. And the cases cited by the government are really based on two separate, distinct doctrines. If AvyTruck applies, then are you stuck for the coverage? And is your argument limited to AvyTruck doesn't apply? Or do you also have an argument within AvyTruck that even if AvyTruck does apply, you're not an implied insured? It's a little bit more complicated than that, Your Honor, because we're not arguing that AvyTruck is completely irrelevant. But the doctrine established in AvyTruck, and it's one case over the last 20 years, that the Alaska Supreme Court has allowed somebody to make a claim directly against a policy, and that's in very limited circumstances in that case. And even the Supreme Court recognized there were special circumstances there. And AvyTruck, in doing so, followed two cases, the farmer's insurance case from the Texas Court of Appeals and the Taylor case from the Louisiana Court of Appeals. And those are two cases also cited by the government here for its proposition. Now, under AvyTruck, an owner of a piece of property can claim against a lessee's insurance policy when that lessee agreed to provide insurance for the owner, and the insurance company agreed to insure the whole ownership interest of that property, not just the lessee's possessory interest. And in AvyTruck, that was because they didn't know the lessee was not the owner. And in that kind of situation, the insurance company is not going to be heard to complain that they are not on the hook for the whole ownership interest of the property, that they somehow only get to pay the value of the lessee's possessory interest. Farmer's Insurance and Taylor established, both are very similar cases, established that that doctrine only applies in the ownership lessee type situation where you're talking about property insurance. That case does not apply. You can't even get into the whole issue of whether risk is the same when you're talking about liability insurance. Now, that was confirmed by the Supreme Court, or the last Supreme Court, in the Olympic case. And in that case, I think it was on a matter of summary and judgment, the court held that the risk between providing liability insurance for the tenant is not the same risk, it cannot be the same risk as providing liability insurance for the landlord. Because liability is personal.  And the liability of the landlord is the liability of the landlord. Now, you can't say that the risks insured are the same. It's not the same thing as saying, listen, I'm insuring your aircraft, and if this aircraft crashes, we're on the hook for the loss of this aircraft. That's where you can say that the risk is the same, is where there's a piece of property involved. If I understand the way the scheme works in this case, in this case, in Olympic, I remember that case, actually, because I litigated it when I was in practice. And there, the landlord could be negligent and insure, as I recall, the fireman died. The fireman died. And it could be the landlord's fault that the fireman died, and it could be the tenant's fault that the fireman died. And in this case, by contrast, the government doesn't do anything itself. It just picks up Bristol Bay Native Corporation's employees' fault. Would that distinguish Olympic? It doesn't, Your Honor, because what Continental insured, what it agreed to indemnify, was those sums that it insured, Bristol became legally obligated to pay its damages. And, you know, as a result of its employees' negligence was one of the criteria, right? And this damages that occurred here was as a result of Bristol Bay's employees' negligence. Right, but because it's an indemnity policy, a liability policy, it only pays when the liability of its insured is established. And if there's sovereign immunity, if there's, you know, in this case, if there's statutory immunity, that liability is never established. Now, contrast that with the liability of the government. There is liability of the government. There's Federal Tort Claims Act coverage exactly when there is no liability to Bristol. It's either one or the other. It's not both. And this court, the Ninth Circuit, in Key v. United States, it's a 1999 case, recognized that difference in liability because it held that an injured party's release of the employee and the employee's insurance company had no effect whatsoever on the liability of the government under the Federal Tort Claims Act. The liability of the government is an entirely separate issue than the liability of the named insureds on the policy. And so you can never say that the risk is the same by insuring Bristol, who in this case has statutory immunity for certain acts, would be the same as adding the government as an implied insured to that policy. You cannot say that the risk is the same. I missed something there. Yeah, I missed something too. Could you go through that again? I'm not following that. It sounds very circular to me. I don't see why it's not the same. Liability is a matter of finding that somebody is liable for damages. It requires a legal finding that there's liability. And when there is... No, no, no. Under your contract, though, this is like maybe I'm just missing something. Under your contract, you have to defend, and as I understand, the government did tender the defense to you, just when there's a lawsuit filed against the employee of the insured, there doesn't have to be any finding of liability to trigger your defense obligation under this policy. You're looking at the... I'm reading the policies, what I'm doing. Any insurance policy is like that. You don't have to have a judgment first. Look, let's be concrete so we can all understand what we're talking about at the same time. Let's say an employee of Bristol Bay Native Corporation puts Clorox in a juice container. And I don't know what it was in the juice container. They give the juice to a little girl, and she's injured by the Clorox. As I understand the scheme here, instead of Bristol Bay Native Corporation having the employer's vicarious liability to the little girl, the United States has the vicarious liability to the little girl. Am I right so far? I don't think it's deemed vicarious liability. Vicarious liability means you're liable for somebody else's negligence, even though you weren't negligent yourself. That's what it means. So why isn't it vicarious liability? You're quibbling with me, and there may be something important there that I don't understand. It's not based on a vicarious liability, which is a common law doctrine. Here it's based upon the extension of Federal Tort Claims Act in the Indian Self-Determination Act. That's two steps. First, there's vicarious liability. That's what makes somebody other than whoever put the Clorox in the juice container liable. If there wasn't vicarious liability, Bristol Bay Native Corporation wouldn't have to worry about it either, just whoever foolishly put Clorox in a juice container. Vicarious liability is what makes Bristol Bay Native Corporation liable. The Indian Self-Determination Act is what makes the United States step in a Bristol Bay Native Corporation's shoes on the vicarious liability. Have I got it right so far? Right. Okay. Now, you were drawing a distinction that I didn't follow there, and Judge Wardlaw had trouble with it too. There's two duties under the insurance policy. One is a duty to defend, and the other is a duty to indemnify. There's only a duty to indemnify, and that's what we were talking about earlier, when liability of the named insured Bristol or its employees is found if there is a judgment. Now, you're also pointing out that there's a duty to defend. Well, there's a duty to defend on those claims where there is possibly a duty to indemnify. If you never get to a duty to indemnify, you never have a duty to defend. And so I think that's the distinction that you're having trouble with. You're saying then that since you sell the insurance to Bristol Bay and since Bristol Bay can never be liable to the little girl, there can never be a duty to indemnify, so there can never be a duty to defend. Is that it? No. When Bristol was sued and for this, when it was sued directly, Continental did come in and defend, and it had a duty to do so, and it had that case dismissed. Now, the way the statutory scheme works, though, is that you don't sue Bristol and its employee and the government somehow pays at the end. It's not that kind of insurance situation. The whole statutory scheme under the Federal Tort Claims Act is that it provides the Federal Tort Claims Act to the government as the exclusive remedy and that they have a direct action against the government. So Bristol and its employee, if it works how it's supposed to work and the proper party is sued, the United States is the named party to that suit, and the people who are Bristol and its employees are not named parties. There's never a duty to defend or indemnify under the policy. I see what you're saying. Okay. But under Olympic and Industrial Indemnity, the Alaska Supreme Court recognized that these kind of implied claims really make no sense at all in the context of liability policies because liability, the issue of whether one person is going to be liable at the end of the day, is personal to that person. I mean, it's personal to Bristol and it's personal to the employee. Now, I want to address a couple other points that the government has raised along the way, and that is, one, it keeps referencing this payment as a premium. Now, let's be very clear about this. The United States did not pay Continental the premium on this case. What happened is that the government provided federal funding to Bristol, and Bristol used those funds as it saw fit in providing the services to its tribal members. And in this case, it purchased liability insurance. And it may have used those funds, it may have used state funding, it may have used funds from private insurance policies, recoveries that it gets. We don't know. It's not a matter of record in this case that the actual money that was used could be traced somehow back to the federal funds. But under the government's argument, even assuming that to be true, the United States would have implied rights on all policies where the policyholder ever received any federal funding. There's no limit to this argument, and would make the United States an implied insured on 90% of all policies ever issued. Now, in making much of this point that Continental agreed to defend Bristol and its employees in this case, the government suggests that the Indian Self-Determination Act Provision 450F note where the employee is deemed to be an employee of the federal government for purposes of the Federal Tort Claims Act, conversely means that the government is deemed to be an employee for purposes of claiming against Bristol's policy. That converse is not true. If you read 450F note, it's only for purposes of Federal Tort Claims Act coverage that these employees are deemed to be employees of the federal government. Now, there's alternative grounds in this case for upholding summary judgment. These kind of implied claims are inconsistent with the Federal Tort Claims Act and with the Indian Self-Determination Act. Now, I want to point out that under the United States Supreme Court decision in Aetna, that insurers such as Continental would have subrogation claims, subrogation rights back against the United States if they ever pay a claim that's otherwise covered by the Federal Tort Claims Act. So in this case, when Bristol was initially sued and Continental was defending that case, if Continental had settled it, for whatever reason, maybe the government wasn't immediately certifying the case as covered by the Federal Tort Claims Act, if Continental had settled it and paid on the policy, Continental would step into the shoes of the Wilsons and would subrogate into the shoes of the Wilsons and would have the Federal Tort Claims Act claim that was ultimately brought against the government in this case. Now, this type of implied claim is also barred by the United States v. Gilman decision of the United States Supreme Court. And under that decision, there are no implied indemnity rights back against an employee when the government pays a claim under the Federal Tort Claims Act. Now, even if you separate the interest between the employee and the employee's insurance company, that reasoning still applies. The reasoning of Gilman and of the Ninth Circuit in the underlying decision was that courts should not imply claims in favor of the United States when they're not so provided for by statute. That's Congress's realm, and courts should not be legislating or implying claims in favor of the United States. And this court confirmed that principle in Plesha. Now, Congress knows how to create rights against insurance companies when a government pays a claim if it wanted to do so, and it easily could have done so in this case if it wanted to under the Indian Self-Determination Act. For example, in a similar statute, there's an Indian Health Care Improvement Act. An Indian contractor, just like the Federal Government, in providing free health care to its tribal members, can seek reimbursement from that tribal member's insurance company, even though the treatment is for free to the party and that individual is not individually liable. That statute creates liability for the insurance company, although there are no indemnity rights under the medical insurance policy. That type of statute does not exist in this case, that kind of statute that gives the United States rights against Continental. And no such claim should be implied under federal law, unless this court has any other decisions. I do, because we wouldn't be implying any claims under federal law. We're trying to figure out Alaska state law, so I don't even know what that argument was addressed to. But I guess what really troubles me is in reading the contract, and this is just setting aside all the evidence and lack of evidence of contemporaneous intent, because I think most of that's not relevant. This contract nowhere says that that liability potentially covered by the FTCA is excluded. Yet there are a number of other exclusions. Given that you knew that CNA knew it was insuring this entity that might possibly have FTCA coverage, it doesn't seem reasonable to me not to exclude that coverage if that's what the policy really means. And I think what I'm supposed to be looking at is, what does this policy say, and how should it be interpreted under Alaska law? Not reading the ISDA or looking at Supreme Court authority on imposing federal theories of liability and segregation. To me, this is a basic insurance dispute, and we've got to read the policy and apply Alaska law. So I'm troubled by the fact there's no exclusion, no reference to the FTCA, and some inconsistent testimony in the record on that point. I misspoke. It's implying a claim under Alaska law, which I do believe is barred by federal principles. But putting that aside, I agree that it's an issue of contract law. It's undisputed in this case that the express terms of the contract do not provide coverage to the United States. Now, the only way the United States could ever bring a claim is if somehow there was an implied right under Alaska law. There is no such implied right. But let's address, what would the policy look like if it said, okay, if there's Federal Tort Claims Act coverage, then those claims are excluded. Well, you're putting Bristol in a situation where there may be a factual dispute between it and its insurance company whether something should be covered under the Federal Tort Claims Act that may, in fact, never be certified as covered under the Federal Tort Claims Act by the federal government. But that's another insurance dispute over language. I'm sure CNA could craft something. You knew what Bristol Bay was. CNA knew what Bristol Bay was. They knew it was an Indian organization under this act when they insured it. So it's sort of an issue that jumps out since it's the government-created entity that there's potential government exposure under the Federal Tort Claims Act, especially after the ICA was amended. And then the other glaring factual point, the reason the premiums seem important to me is not as they go to intent, but because the premium was based on the square footage of the premises. And so that seems to include, I mean, they weren't reduced for the act, but they kept going up based on the square footage of the premises. Right, but it's still, the insurance policy still is a liability policy insuring Bristol's liability. Now, let's say you have 100 people on the premises, and let's say something happens and all of them are liable. Now, unless they are Bristol employees and there's vicarious liability and Bristol's somehow on the hook, that's the only time the policy kicks in. If somebody's injured on the, Bristol's policy does not cover all injury on Bristol's property just because it happens on that property. It's still a liability policy, and there still has to be a finding of liability against Bristol before there's any duty by Continental to pay. Now, the United States brought to this court's attention the Severson case, and there's also the industrial indemnity case. What those two cases establish is that an injured party and somebody else who may be liable, and they thought they had an agreement to be added to a policy but were not, in those particular situations, they don't have claims against that policy. They can't directly sue Continental. They must first, if there's going to be any right at all, they must first establish the liability of the named insured, and then there's a duty to indemnify under that policy. Okay, I don't have anything further. Thank you, counsel. I have three points. I'll try and be as brief as possible. The first is CNA's claim that the distinction between the duty to defend and the duty to indemnify is illusory because under the FTCA, the United States would step in to defend Bristol Bay employees and assert the United States as the proper defendant in that context. As to the duty to indemnify, CNA's theory would eliminate the possibility of implied insured in the liability context because under that theory, any time the potentially implied insured would be liable, by definition, the named insured would not be liable, and we know that that's not the case because the Alaska Supreme Court has recognized the possibility. Counsel, let me ask you a little bit about that. Yes, Your Honor. About two things. One is what you're just saying now on implied insured. AVI truck was haul insurance, and the court said, it doesn't matter who owns the airplane. This is haul insurance, and the risk is exactly the same no matter who the owner of the haul is. In this particular, you can think of circumstances where ownership would affect the risk, but it didn't in that one. Olympic versus Pravlosh, the insurance wasn't casualty insurance like AVI truck. It was liability insurance, and there the Supreme Court says, it does matter, and this strikes me as more analogous to Olympic than to AVI truck because this is liability insurance, not casualty insurance. Am I missing something there? Yes, Your Honor. As Your Honor pointed out before, the United States doesn't act except through its employees, so there's no way that the United States could have done something to increase liability. The only liability that existed was liability for the purposes of this case. What does that have to do with the distinction between AVI truck and Olympic that I was drawing? Because the point was that under Olympic, risk could have been greater because the owner could have, the landlord could have done something that would have increased the risk of coverage to the insurer. I don't think the Supreme Court was explicit about exactly how the risk would be greater. I thought that it was a fairly direct inference from the case, Your Honor, that the point was that there were things that the tenant, excuse me, that the landlord could do that could increase risk and that it would be unfair to assume that just coverage of the tenant would also cover the acts of the landlord, and in this case, the United States can't act. It's not an entity that acts. The only thing that acts are the employees. The only people that act are the employees here, so the point is that whether Bristol Bay is deemed to be the employer or the United States is deemed to be the employer. Oh, I see. You're saying the U.S. couldn't do anything different from what Bristol Bay could do. Precisely, Your Honor, because it's a vicarious. My other question for you is, just taking notes on your answer. If I understood your adversary correctly, Bristol Bay does other things besides this Indian Self-Determination Act, what was it, an alcohol rehab center or something? Yes, that's what this was, Your Honor. Does other things, like some sort of housing work and some state programs, teaching kids how to swim, a water safety program, so its liability insurance could very well be for the other things that it does, like if you run a program teaching kids how to swim, you need liability insurance because some of the little kids may drown when they're trying to learn how to swim. That means it wouldn't be a policy empty of any possibility of relief at all. It could just be like our judge's liability policy, a cheaper policy because some of the risks aren't covered. Right. I think, Your Honor, this positive point on that issue is the fact that the premiums from before the FTCA covered Bristol Bay to after the FTCA covered Bristol Bay remained the same and then increased over time. I don't know if that's enough for me to draw an inference from. Is it true that, so far as we can tell from the record, Bristol Bay does other things? It doesn't just run the alcohol rehab center under the Indian Self-Determination Act? I'm not sure about what facts there are in the record on that point, Your Honor. I would have to double check and I could... I assume you know the record much better than me since it's your case. I certainly have reviewed the record, Your Honor. I don't remember any facts explicit in the record that speak to the other things that Bristol Bay does outside of... So you can't say one way or the other? No, I can't, Your Honor, but I'd be more than happy to send in a supplemental letter to the court if the court would like that. We'll let you know if we do. Can I ask you something on this? It's ER 308. It's the coverage part declarations. Does... So... The premium, it says the classification is for the health care facility. I guess it measures the premium by the... Premises size of the health care facility. Does that... include these other, like, house, home buildings? My understanding of the coverage, and this perhaps is the most direct answer to Judge Kleinfeld's question, is that this covered... this insurance policy covered occurrences that occurred... that take place on the premises of the health care facility, not outside of the health care facility. So... I think that the housing issues and the swimming issues, if there is such, unless they take place on the premises, I think would not be covered under this policy. So then could we find that out somewhere in the record? What this health care facility, because then that argument that this policy was covering swimming and house building just falls by the wayside. I think that's right, Your Honor. But I mean, how do we know from the record? Whether or not there were... How do we know exactly what the health care facility that... What was on the premises? The premium was calculated for is? Well, I mean, I think that, you know, there's nothing in the policy. I've certainly read the policy a number of times, and there's nothing in the policy that speaks to insurance for swimming pools or speaks to insurance for tenants and housing. But then if we're building houses, you would get a cost of construction insurance policy. Yes, Your Honor. You wouldn't get a general liability. That's right, Your Honor. This is a commercial general liability policy that is supposed to cover occurrences on the premises of the health care facility. Actually, if we were to go to parole evidence, and I don't know if it's proper to do it, but if we were, there's something at excerpt page 438. It says, Bristol Bay carries out nonprofit activities in health, education, and social services for Alaska natives of the Bristol Bay area. It looks from the handwriting as though that's by Continental's person, Deborah Wyatt Brown. I can't tell exactly what this thing is, and that's one reason not to use parole evidence. If we're supposed to use it, it sounds like the underwriter knows that Bristol Bay has a broader range of duties than just running an alcohol rehab center under the Indian Health Self-Determination Act. It does sound like it, but it's also true that Bristol Bay, excuse me, CNA conceded that it had, among other things, a memorandum from Bristol Bay's council saying that if you want to exclude FTCA coverage, you should have an explicit exemption in the policy to help your insurer better calculate the risk involved. And CNA conceded that it had that document before issuance of the policy,  and so I think that the evidence fairly establishes that CNA was aware of the FTCA coverage, yet did nothing to exclude that coverage from the policy in question here. Thank you, counsel. Thank you, your honors. The United States v. CNA financial is submitted. We will adjourn until 9 a.m. tomorrow. All rise.
judges: Hall, Kleinfeld, Wardlaw